IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MICHAEL E. JOHNSON, #335-470<br>   Plaintiff, | *<br>*|
| v. | CIVIL ACTION NO.  JFM-08-2111<br>* |
| EDWIN ALDANA, et al.,<br>   Defendants. | * |

\*\*\*\*\*\*

## MEMORANDUM

On August 11, 2008, pro se plaintiff Michael E. Johnson, an inmate currently incarcerated at the Patuxent Institution in Cumberland, Maryland, filed a civil rights complaint pursuant to 42 U.S.C. §1983 seeking money damages and injunctive relief.  Plaintiff alleges that while incarcerated at the Roxbury Correctional Institution  (RCI) he was denied adequate medical care.  Paper No. 1.  Pending before the court is defendants' dispositive motion  (*see* Paper No. 9), which shall be treated as a motion for summary judgment.  Plaintiff has not filed a response.[1]   No hearing is needed to resolve the pending dispositive motion. *See* Local Rule 105.6 (D. Md. 2008).  For the reasons that follow the motion SHALL BE GRANTED.

### Factual and Procedural  Background

Plaintiff alleges that for approximately five months, while housed at RCI he was denied adequate medical care.  Paper No. 1.  Specifically, plaintiff alleges that he was denied psychological and other medication,  and treatment for his heart problem, chest pain, seizures, urinary retention, left arm injury and an ear infection.  *Id*.

---

[1] Pursuant to the dictates of *Roseboro v. Garrison***,** 528 F.2d 309, 310 (4th Cir. 1975), on November 21, 2008, plaintiff was notified that defendants had filed a dispositive motion, the granting of which could result in the dismissal of his action.  Paper No. 10. Plaintiff was also informed that he was entitled to file materials in opposition to that motion within seventeen (17) days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the court. *Id.*

The uncontroverted medical records reveal that on May 8, 2008, plaintiff was transferred from the Maryland Reception Diagnostic and Classification Center to RCI. After plaintiff's medical intake screening, a chart review was prepared by Dr. Aldana. Aldana ordered plaintiff be seen for follow up within fourteen days with the pulmonary and neurology clinics and for determinations to be made concerning his Hepatitis C status and seizure disorder. A referral was entered for a psychiatric consult. All of plaintiff's current medications were continued. Paper No. 9, Ex. A, B. p. 5.

On May 14, 2008, plaintiff submitted a sick call slip indicating he was suffering chest pain. He was evaluated that same day and advised the nurse that he injured his wrist the preceding night by hitting it on the wall. Plaintiff's wrist and fingers were swollen. He was provided an ace bandage wrap and Motrin. Plaintiff denied suffering from chest pain and that time, indicating that he suffered from chest pains four days ago. It was noted that plaintiff was on the list to see the physician. *Id.*, p. 6.

Plaintiff submitted a sick call slip on May 26, 2008, complaining of a broken left hand, injuries to his foot and requesting a doctor visit to discuss his heart medications. At the time of his evaluation, plaintiff only complained of pain in his hand. He was provided a splint. *Id.*, p. 7. On June 18, July 3 and 5, August 15 and 28, 2008, additional ace wraps were provided to plaintiff for use with the splint. *Id*, p. 15, 19, 70, 75.

On June 3, 2008, plaintiff was evaluated by Aldana in the Cardiovascular Clinic. It was noted that each of plaintiff's conditions: seizures, hepatitis c, schizophrenia, and hypertension were stable with no incidents noted since the last exam. *Id.,* p. 8.

Plaintiff was evaluated by medical staff on June 25, 2008, after being brought to the dispensary as a walk up patient complaining of chest pain. Plaintiff advised that he had run out of nitroglycerin tablets. Plaintiff was given nitroglycerin and reported pain relief. His oxygen saturation was 96%, within normal limits. *Id.*, p. 16.

Plaintiff was again evaluated on June 27, 2008, after submitting a sick call slip complaining of pain in his left arm and feet. Upon evaluation, plaintiff complained of pain in his right ear. Ear wax was found and cleaned out. The nurse noted indicated plaintiff would be referred to the physician assistance for further evaluation. *Id.*, p. 17

On July 3, 2008, plaintiff was seen by medical staff based on a sick call slip indicating he was suffering from chest pain. Upon evaluation, plaintiff stated that he woke up with chest pain, "took a nitro," and the pain was going away. He also complained that his ear hurt. The nurse noted that treatment was not indicated at that time. *Id.*, p. 18.

Plaintiff was next evaluated on July 5, 2008, due to complaints of chest pain. Plaintiff advised the nurse that he had taken one "ntiroQuick" prior to his arrival at the medical unit, and a second upon his arrival. He was given a third "nitroQuick" and reported relief. He was observed speaking without difficulty. Plaintiff further stated that he "usually takes nitro and lies down with relief within 10-15 minutes." *Id.*, p. 20-21, 24-27. Three EKGs were performed throughout the day and reviewed by Aldana. The result of the tests were normal. *Id.*, p. 22, 24-27. Blood tests were also performed to determine whether plaintiff was experiencing a myocardial infarction ("MI"). The tests were negative. *Id.*, p. 28.

On July 10, 2008, Aldana examined plaintiff. Plaintiff complained of recurrent episodes of chest pain occasionally radiating to his left shoulder and arm. His blood pressure and oximetry reading were good. Aldana noted that no acute changes were noted on the repeated EKGs. *Id.*, p. 29-33. Aldana referred plaintiff to a cardiologist for further evaluation and possible stress test. *Id.*

Plaintiff was evaluated by RCI medical staff on July 18, 2008, due to complaint of an ear infection. Excessive ear wax was found in plaintiff's left ear and it was noted that his right ear canal was small. Plaintiff was provided Motrin and referred to the physician's assistant. *Id.* Exs. A and B, p. 46.

The following day, plaintiff was seen as a walk up patient complaining of chest pain. He

3

stated that the pain had gone away because he had just taken to nitroglycerin tablets. *Id*., p. 48. No treatment was provided as the problem had resolved.

On July 22, 2008, plaintiff was again seen as a walk up patient due to his complaint of pain in his right ear. A large amount of wax was observed in both ears. The ears were flushed. Plaintiff was seen by Aldana who ordered antibiotics and analgesic medications. *Id*., p. 49-50. Plaintiff submitted sick call slips on July24 and 25, 2008, complaining of pain in both ears. *Id*., p. 54-55.

On July 23, 2008, plaintiff appeared in the dispensary and asked for a catheter stating he had an order for one. Plaintiff showed medical personnel the hospital order of July 12, 2008, which referenced urinary retention. Plaintiff was advised that his order was invalid and he could not be given a catheter without a valid order. *Id*., p. 51. On that same day, plaintiff was evaluated by the nurse for complaints of blood in his urine. Plaintiff was given antibiotics and analgesic medication, and a urine sample was sent to the lab. *Id*., p. 52-53, 58. The culture demonstrated that plaintiff's urinary tract infection was sensitive to the antibiotics prescribed. *Id*., p. 59. On July 23, 2008, an order was entered to x-ray plaintiff's kidneys, ureters, and bladder. *Id*., p. 56. Plaintiff refused to be x-rayed. *Id*., p. 57.

On August 5, 2008, plaintiff was evaluated by medical staff as walk up patient complaining of chest pain. Plaintiff advised he took two nitroglycerine tablets ten minutes before his evaluation. He was given a third and EKG performed. Plaintiff reported that the pain abated. *Id*. P. 60-62. The EKC was abnormal showing frequent premature ventricular contractions. Plaintiff refused to be transported to Washington County Hospital for further evaluation. Aldana ordered a cardiology consultation on the next available date. *Id*.

On August 13, 2008, plaintiff again complained of chest pain. His blood pressure oxygen saturation level were good. An EKG was performed and no acute changes were noted. *Id*., p. 63-64. The following day, plaintiff was evaluated by Ernest Amegashie, M.D., cardiologist. An echocardiogram and cardiac stress tests were given. The results showed no evidence of MI. Dr.

4

Amegashie recommended that plaintiff continue his current medication regimen. *Id*., p. 65-69. Plaintiff was evaluated due to complaints of chest pain on September 23, 2008. No abnormal findings were noted and no treatment provided. *Id*. p. 93.

Plaintiff submitted sick call slips complaining of continued ear pain on August 18, 20, 22 and 25, 2008. *Id*., p. 71-74    Plaintiff was evaluated on September 8, 2008 by Aldana who observed impacted left ear and a right ear canal that was red, tender, and draining. Aldana also observed minimal swelling on plaintiff's left wrist. *Id*. p. 77-83. Aldana directed that plaintiff continue on antibiotic ear drops and tablets and plaintiff's left ear be irrigated. A wrist place was ordered and plaintiff was referred to an orthopedist and otolaryngologist. *Id*.[2]

Plaintiff's psychiatric condition was treated by psychiatrists and their staff. Upon his incarceration at RCI, plaintiff's medication for his schizo-affective disorder were renewed. *Id*., Ex. A. On September 13, 2008, plaintiff was found unconscious in his cell. He was transferred to the emergency room at Washington County Hospital for evaluation. Plaintiff was diagnosed with having suffered an overdose of opiates. Plaintiff was not prescribed any medication which contained opiates. *Id*., p. 84-92.

During his incarceration at RCI, plaintiff received Dilantin for his seizure disorder. *Id*., Ex. A. On July 12, 2008, plaintiff was admitted to the infirmary after suffering a seizure. *Id*., p. 34-45. Plaintiff was transferred back to RCI on July 17, 2008, and did not demonstrate any further signs of seizure activity during his incarceration at RCI. *Id*., Ex. A. Plaintiff was evaluated due to complaints of chest pain on September 23, 2008. No abnormal findings were noted and no treatment provided. *Id*. p. 93.

## Standard of Review

A motion for summary judgment is governed by Fed. R. Civ. P. 56(c) which provides that [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to

5

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

**A.     Respondeat Superior**

Plaintiff's allegation against Correctional Medical Services, Inc. (CMS), the private prison

---

[2] Plaintiff was transferred from RCI before Aldana could follow up on these referrals. *Id.*, Ex. A.

health care provider is based solely upon the doctrine of *respondeat superior*. The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *see also Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials "is not be based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001) *citing Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994). Even where the defendant is a private corporation, rather than a municipality or other public agency, the doctrine of *respondeat superior* does not apply in §1983 actions. *See Nedd v. Correctional Medical Services*, Civil Action No. JFM-92-1524 (D.Md., October 22, 1992), citing *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *McIlwain v. Prince William Hospital*, 774 F.Supp. 986, 990 (E.D.Va. 1991). Accordingly, plaintiff's claims against Correctional Medical Services shall be dismissed.

**B.     Medical Care**

...

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), citing *Wilson v. Seiter,* 501 U.S. 294, 297 (1991). To state an Eighth Amendment claim for denial of medical care, plaintiff must demonstrate that the actions of defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The second component of proof requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.

8

Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris* 240 F. 3d 383 (4th Cir. 2001), citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Records before the court demonstrate that defendants have not acted with indifference to plaintiff's medical needs. Rather, plaintiff simply disagrees with the medical and professional judgment of his care providers.[3] Such disagreements with a course of treatment do not provide the framework for a federal civil rights complaint but rather, at most, state a claim for negligence. *See Russell v. Sheffer*, 528 F. 2d 318 (4th Cir. 1975). Plaintiff's evaluation and treatment by nurses and physician's assistants in coordination with the treating physician are constitutionally adequate and do not establish deliberate indifference to plaintiff's serious medical needs.

**2.   Injunctive Relief**

During the pendency of this action, plaintiff was transferred from RCI. Paper No. 9. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)*; Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987)*; see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records

---

[3] Plaintiff has a history of schizophrenia, seizure disorder, asthma, coronary disease, hypertension, a mal-formed fracture of the left forearm, and ear infections. Plaintiff was prescribed and received valporic acid, Zyprexa, Dilantin, Albuterol, Lithium, Inderal,, nitroglycerin, Phenytoin, Propranolol, Zithromax, Naprosyn, Corisporin, Tylenol #3, Benadryl, Dyphenyhdramine, Floxin, and Avelox for pain for his various conditions. He was also evaluated by various medical providers including nurses, a physician's assistant, a psychiatrist, and physicians during his incarceration at RCI. Paper No. 9, Ex. A and B.

before the court that plaintiff is no longer housed at RCI, his request for injunctive relief has been rendered moot. Consequently, plaintiff's request for injunctive relief shall be denied.

## **Conclusion**

For the reasons stated above, defendants' motion for summary judgment shall be granted. A separate order follows.

August 19, 2009　　　　　　　　　　　　　　　/s/
Date　　　　　　　　　　　　　　　　　　　J. Frederick Motz
　　　　　　　　　　　　　　　　　　　　　United States District Judge